STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

FILED

March 16, 2021

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **W.M. and P.M.**

**No. 20-0836** (Putnam County 19-JA-74 and 19-JA-75)

**MEMORANDUM DECISION**

Petitioner Mother A.M., by counsel Brenden D. Long, appeals the Circuit Court of Putnam County's September 16, 2020, order terminating her parental rights to W.M. and P.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Steven R. Compton, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Catherine B. Wallace, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner violated the dispositional order of a previous child abuse and neglect matter from 2017. The March of 2017 abuse and neglect petition alleged, among other things, that petitioner failed to supervise the children and left them in unsafe environments such as in the care of the paternal grandfather, who had substantiated maltreatment for sexual abuse of other female grandchildren. In that case, the DHHR provided parenting and adult life skills classes and transportation services to petitioner during her preadjudicatory improvement period. In August of 2017, petitioner successfully completed her improvement period, and the children were returned to her sole custody with the requirement that the father (who was previously convicted of charges of child pornography in 2014) only exercise supervised visitations through a DHHR approved third-party

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

service provider. Petitioner also agreed to prevent contact between the children and the paternal grandfather. However, in September of 2019, the DHHR learned that petitioner, newly homeless, asked the father to take the children, and the father then sent the paternal grandparents to get the children from petitioner. The children then resided with the father and the paternal grandparents while petitioner had no plan to retrieve them. The DHHR filed the underlying petition alleging that petitioner violated the terms of the previous child abuse and neglect order mentioned above and that petitioner failed to provide the children with necessary food, clothing, shelter, supervision, education, and medical care.

The circuit court held an adjudicatory hearing in December of 2019, wherein petitioner stipulated to the allegations of abuse and neglect as contained in the petition. Petitioner filed a motion for a post-adjudicatory improvement period, but the circuit court held the motion in abeyance. However, the circuit court ordered that petitioner undergo a parental fitness and psychological evaluation, participate in adult life skills and parenting sessions, submit to drug screenings, and attend supervised visitations. The circuit court further directed petitioner to comply with all mental health treatment. In March of 2020, petitioner completed the parental fitness and psychological evaluation, which concluded that she had an "extremely poor" prognosis for improved parenting as she failed to accept responsibility for the abuse and neglect of the children and blamed the father for allowing the children to live with the paternal grandparents. Petitioner also stated during her evaluation that she did not need to improve her parenting abilities.

According to a DHHR report submitted in April of 2020, petitioner tested positive for methamphetamine on four occasions and failed to submit to drug screens on thirteen occasions. Further, the report stated that petitioner remained unemployed and continued to live with her boyfriend despite the couple's reported instances of domestic violence. Finally, the report stated that petitioner denied having a drug abuse problem and refused an available placement at an inpatient rehabilitation facility that was previously recommended by the multidisciplinary team.

In July of 2020, the guardian filed a report recommending the termination of petitioner's parental rights, and arguing that petitioner continued to test positive for drugs, continued to stay in the abusive relationship that resulted in her homelessness in September of 2019, and had not visited the children. As such, the guardian argued that petitioner had not progressed despite her receipt of services and was not capable of prioritizing her children's safety.

The circuit court held a dispositional hearing in August of 2020. The DHHR moved to terminate petitioner's parental rights, arguing that petitioner tested positive for methamphetamine several times throughout the proceedings, failed to be fully compliant with services, failed to attend inpatient drug treatment, and had an extremely poor prognosis for improved parenting. The DHHR further argued that there were no additional services to offer petitioner to correct the conditions of abuse and neglect. The guardian agreed with the DHHR's motion and argued that petitioner had failed to accept responsibility for the conditions of abuse and neglect. In response, petitioner opposed the DHHR's motion and moved for a post-dispositional improvement period, arguing that she could attend inpatient drug rehabilitation if given another improvement period. Upon hearing the evidence, and in reliance upon the summary and conclusions contained in the parental fitness and psychological evaluation, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that

2

termination of her parental rights was necessary for the children's welfare. Accordingly, the circuit court denied petitioner's motion for a post-dispositional improvement period and terminated her parental rights by its September 16, 2020, order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period. Petitioner asserts that she was willing to attend inpatient drug rehabilitation and comply with the terms and conditions of an improvement period. She further notes that she previously successfully completed a preadjudicatory improvement period in the 2017 case and the children were returned to her care. Upon our review of the record, we find petitioner is entitled to no relief.

West Virginia Code § 49-4-610(3)(B) provides that a circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). On appeal, petitioner completely fails to acknowledge the burden she carried to be granted a post-dispositional improvement period. It is clear from the record that petitioner was unlikely to fully participate in a post-dispositional improvement period based on her failure to comply with court-ordered services that were implemented after the adjudicatory hearing. The evidence shows that petitioner tested positive for methamphetamine four times and failed to drug screen thirteen times. Despite this, petitioner continued to claim throughout the proceedings that she did not have a drug problem, and she refused placement at an inpatient treatment program. Also, according to the guardian's report, petitioner failed to attend supervised visitations with the children, which speaks directly to her inability to correct the conditions of abuse and neglect at issue. *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) ("[T]he level of interest demonstrated by a parent in

---

[2]The father's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption by their current foster family.

visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently . . . .").

Most importantly, petitioner's parental fitness and psychological evaluation, completed three months after petitioner stipulated to the conditions of abuse and neglect, revealed that she had recanted her admission of responsibility, denied wrongdoing, and saw no need to change her parenting. This Court has recognized that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). In contradiction to her early admission of neglect and abuse in the proceedings, petitioner shifted responsibility away from herself and onto the father, claiming that he lied about taking the children to his parents. However, petitioner's parental fitness evaluator found this incredible as petitioner admitted to giving the children over to the paternal grandparents when they picked up the children in September of 2019. Thus, the evidence below suggests that petitioner was unlikely to fully participate in and benefit from a post-dispositional improvement period as she failed to acknowledge wrongdoing and blamed others for her lapse of judgment. Therefore, we find no error in the circuit court's decision to deny her motion for a post-dispositional improvement period.

This evidence also supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to follow through with a reasonable family case plan, despite an extended period of time to do so. She failed to meet the case plan's goals by failing to comply with drug screening, attend supervised visitations, and obtain drug treatment. Additionally, petitioner did not benefit from other services such as parenting and adult life skills sessions as she continued to find no fault in leaving her children in the care of the father and the paternal grandfather. Petitioner's main argument on appeal is that she could attend inpatient drug treatment if granted an improvement period. However, it is clear from the record that petitioner was given the chance to enter inpatient drug treatment several months prior to disposition and refused to attend.

"[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. In addition to petitioner's failure to address her drug addiction, she remained in an abusive relationship with her boyfriend, which would have placed the children in danger. As such, it was necessary for the children's welfare that petitioner's parental rights be terminated. Accordingly, we find no error in the circuit court's conclusion that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 16, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: March 16, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton